UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ANN MARIE GOVERNALE,

                        Plaintiff,

    -against-

COLD SPRING HARBOR CENTRAL
SCHOOL DISTRICT, JAY MATUK,
JUDITH WILANSKY, DENISE
CAMPBELL, and DIANE WALSH,
(in their Official and Individual Capacities
Pursuant to § 1983 and
NYEL §§ 290 et. seq.).

                        Defendants.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
14-CV-2689 (JMA) (SIL)

**LOCKE, Magistrate Judge:**

        Presently before the Court is a motion for summary judgment submitted by Defendants, Cold Spring Harbor Central School District ("Cold Spring Harbor" or "the District"), Jay Matuk ("Matuk"), Judith Wilansky ("Wilansky"), Denise Campbell ("Campbell"), and Diane Walsh ("Walsh") (collectively "Defendants"). *See* Docket Entry ("DE") [29]. By way of Complaint filed April 29, 2014, Plaintiff Ann Marie Governale ("Plaintiff" or "Governale"), brings this action alleging claims pursuant to: (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) 42 U.S.C. § 1983; and (3) the New York State Human Rights Law ("NYSHRL") § 290 *et. seq. See* Complaint (Compl."), DE [1]. On March 4, 2016, Defendants filed their motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(a) ("Rule 56") for summary judgment, which Plaintiff opposes. *See* DE [29], [35]. On May 10, 2017, Judge Azrack referred the motion to this Court

for a Report and Recommendation as to whether it should be granted. *See* DE [41]. On June 15, 2017, pursuant to 28 U.S.C. § 636(c), the parties filed an executed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, indicating their intention to have this Court "conduct all proceedings and order the entry of a final judgment" on the motion, which Judge Azrack So Ordered on June 19, 2017. *See* DE [43, 44]. For the reasons set forth herein, Defendants' motion is granted in part and denied in part.

I. **RELEVANT FACTUAL BACKGROUND**

The following facts are taken from the parties' pleadings, deposition transcripts, affidavits, exhibits and respective Rule 56.1 statements. Unless otherwise noted, the following facts are not in dispute.

Plaintiff began working at Cold Spring Harbor as a Special Education Leave Replacement Teacher ("Leave Replacement Teacher") in the Special Education Department during the 2008-2009 school year. *See* EEOC Affidavit of Ann Marie Governale ("Governale Affidavit"), DE [31-33], at 1.[1] During Governale's first year, she was assigned to teach Math, English, and Resource Room, and work mostly with special education students. *See* Governale Deposition ("Governale Dep."), DE [37-1], at 43. Defendants Diane Walsh, the Chairperson of the Special Education Department, Denise Campbell, the Director of Special Education, and Jay Matuk, the Principal at Cold Spring Harbor, had supervisory authority over Plaintiff. *See* Deposition of Denise Campbell ("Campbell Dep."), DE [37-2] at 11-16. Governale

---

[1] Lacking numbered paragraphs, the Court cites to Governale's affidavit by way of pagination.

received positive performance evaluations and made no complaints concerning the treatment of special education students during her first year. *See id*. at 38, 44.

Plaintiff was then rehired for a one-year appointment during the 2009-2010 school year as a Secondary Special Education Teacher. *See* Governale Affidavit at 2. In the spring of 2010, Governale applied, but was not hired, for a probationary position as an English Teacher at Cold Spring Harbor. *See id*. at 2-3. Instead, Governale, once again, worked with mostly special education students and received a positive performance evaluation for the 2009-2010 school year. *See* Campbell Dep. at 39, 62. Plaintiff does not recall raising any issues and, "for the most part," was satisfied with the special education services provided for students during her second year. *See* Governale Dep. 62- 63.

Governale was hired again for another one-year appointment, for the 2010-2011 school year as a Leave Replacement Teacher assigned to teach English classes to special education students. *See* Governale Affidavit at 3; Governale Dep. at 82-83. During this school year, Governale, along with all the other teachers in the Special Education Department, complained to Walsh "of the difficulty getting [lesson] plans from teachers, and that it was seriously affecting our ability to meet the [Individualized Educational Program ("IEP")] accommodations of the special education students." *Id*. Despite the complaint, Plaintiff received a positive performance evaluation for the 2010-2011 school year. *See id*. at 39-40.

Governale, once again, was hired as a Leave Replacement Teacher for the 2011-2012 school year. *See id*. at 104-05; *see also* Governale Aff. at 5. During that

school year, Plaintiff made several complaints about the special education services offered at the school. *See* Governale Dep. at 108. Governale alleges that, during the 2011-2012 school year, she complained to Walsh about Cold Spring Harbor's New York State Academic Intervention Services Program ("AIS"), which can be provided, and applies, to both special education and general education students. *See* Governale Aff. at 6; Campbell Dep. at 32-34, 82-83. Plaintiff also states that she voiced concerns to Walsh about Peter Gregorchuk, a Special Education teacher, who was allegedly helping special education students cheat on their exams, providing students with test answers. *See* Governale Dep. at 117-18. Further, Governale also advised Walsh that a teacher assistant ("TA") named Christine Barrese was writing research papers for special education students. *See id.* at 124-25. Plaintiff admits that, at the time, other teachers also complained about cheating at Cold Spring Harbor. *See id.* at 97. Moreover, during the school year, Governale once again voiced her concern that teachers were not following students' IEPs and that the special education students were not being served by the programs offered. *See id.* at 133-35, 138-39. Plaintiff received a positive performance evaluation for the 2011-2012 school year. *See* Governale Aff. at 7-8. Governale admits that during her first four years at Cold Spring Harbor she had no problems with how she was treated or any problems with the District's administration. *See* Governale Dep. at 390.

The District alleges that there were no positions available for Plaintiff at Cold Spring Harbor for the 2012-2013 school year except for a one-year TA position. *See*, *e.g.*, *id.* ¶ 45. In July of 2012, Plaintiff was not under contract with Cold Spring

Harbor and was free to obtain employment for the 2012-2013 school year with any other school district. *See* Email from Denise Campbell to Ann Marie Governale, DE [31-9]. To that end, Campbell provided Plaintiff with leads for teaching jobs in other districts. *See* Campbell Dep. at 49. In response to Governale's request for help, Matuk also informed her that he would contact the Principal of Connetquot High School on her behalf. *See* Email from Ann Marie Governale to Jay Matuk, DE [31-10]. However, as Plaintiff was unable to get a job with another district for the 2012-2013 school year, she accepted a job as a TA at Cold Spring Harbor. *See* General Municipal Law § 50(h) Hearing of Ann Marie Governale, DE [31-4], at 49-50. The TA position paid a year salary of $27,995.00, which constituted a pay cut of more than $70,000. *See* Ann Marie Governale TA Position Offer Letter, DE [37-4].

Plaintiff alleges that she increased her advocacy, during the 2012-2013 school year, for the special education learning disabled students at the District. *See* Governale Dep. at 337-38. Specifically, during that year, Governale alleges that she complained, or increased her complaints, regarding the following:

> (1) that kids with learning disabilities that were supposed to be receiving resource room as per their IEP's were pulled and placed in learning center with plaintiff; (2) that plaintiff did not agree with the way that Diane Walsh was running the department and thought that it did not serve the needs of the special education students; (3) that the special education students were being deprived of appropriate services and consistent support; (4) that the special education students were dumped on the teaching assistants and that it was not appropriate for meeting the needs of the students; (5) that there were not sufficient AIS programs in place for special education students; (6) that there was a lack of support and instruction offered to special education students; (7) that the learning center was

not an appropriate placement for students that had been assigned to the resource room; and (8) that special education students were not receiving what they were entitled to.

Plaintiff's Counterstatement to Defendants' Statement of Facts Pursuant to Local Rule 56.1 and Plaintiff's Statement of Additional Facts Pursuant to Local Rule 56.1(b) ("Plaintiff's Counterstatement"), DE [36], ¶ 103; *see also* Governale Dep. at 202-04, 214-16, 220-23, 235, 241, 246-47, 342-46, 352-53, 380-81. Plaintiff further made complaints regarding the issue of TAs improperly providing AIS services. *See* Governale Dep. at 356-57. Governale acknowledges that other TAs made complaints, but alleges that no other teacher or TA advocated as strongly and frequently as she did. *See id.* at 357. Further, Plaintiff raised the issue that the duties she was tasked with as a TA were outside the parameters of the position. *See id.* at 235. By December 2012, Plaintiff had exceeded all her personal and sick days for the 2012-2013 school year. *See* Human Resources Notice, DE [31-24]. In February 2013, Governale alleges that she was told that there would not be a position available to her for the following school year due to budget cuts. *See id.* at 362.

During the 2012-2013 school year, Governale also had alleged issues regarding lateness and conflicts with other staff members. *See* Campbell Dep. at 98-100. Plaintiff testified about two incidents with TA Posey Heim ("Heim"). *See* Governale Dep. at 177-78, 260-62. With regard to the first incident, Governale testified that, while she was escorting a disabled student to class, she was confronted about her lateness by Heim, who stated "[y]ou are never where you are supposed to be." *Id.* at 118. Further, Plaintiff testified about another dispute where she refused to make a

photocopy for Heim and Plaintiff stated that making photocopies "was not [her] job." *Id.* at 254-57. Denise Campbell testified that, in March or April, she had a meeting with Plaintiff and expressed concern over her attendance issues as well as the arguments that Plaintiff had with her colleagues. *See* Campbell Dep. at 98-100. Campbell testified that she ultimately encouraged Plaintiff to resign. *See id.*

On or about April 19, 2013, Defendant Wilansky wrote to Plaintiff to inform her that she was recommending termination of her employment to the Board of Education for the following reasons: (1) insubordination; (2) unprofessional behavior in the presence of students and staff; and (3) frequent tardiness. *See* Letter from Judith Wilansky to Ann Marie Governale, DE [31-29]. On April 25, 2013, Defendants were served with Plaintiff's Notice of Claim. *See* Notice of Claim, DE [31-25]. On May 3, 2016, Plaintiff wrote to Matuk informing him that she believed that she was "being subjected to adverse treatment, increased supervision and an uncomfortable and hostile work environment as a result of [her] engagement in protected activity. [She] request[ed] that this behavior stop immediately." *See* Email from Ann Marie Governale to Jay Matuk, DE [31-30]. On or about May 10, 2013, Plaintiff was notified that her employment at Cold Spring Harbor would be terminated effective June 30, 2013. *See* Email from Jay Matuk to Ann Marie Governale, DE [31-31].

## II.  PROCEDURAL HISTORY

By way of Complaint filed April 29, 2014, Governale brought this action alleging claims under the ADA,[2] 42 U.S.C. § 1983; and the New York State Human

---

[2] Consistent with the lack of individual liability in the retaliation provision of the ADA, Plaintiff brings this claim against Defendant Cold Spring Harbor Central High School District only and not the

Rights Law ("NYSHRL") § 290 *et. seq.*[3] *See* Complaint (Compl."), DE [1]. Defendants

interposed an Answer which was filed on May 29, 2014 and amended on May 7, 2015.

*See* Answer, DE [4]; Amended Answer, DE [21]. Defendants now move for summary

judgment, dismissing this case in its entirety. Plaintiff opposes. *See* DE [29], [35].

## III. LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Under Rule 56, summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Rule

56(c) deems a fact "material" when its resolution "might affect the outcome of the suit

under the governing law." *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247,

257–58 (E.D.N.Y. 2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248,

106 S. Ct. 2505, 2510 (1986)). The evidence alleged to substantiate a "genuine issue"

must be "such that a reasonable jury could return a verdict for the nonmoving party."

*Id.* Accordingly, an issue will be deemed genuine when "[t]he inferences to be drawn

from the underlying affidavits, exhibits, interrogatory answers, and depositions must

be viewed in the light most favorable to the party opposing the motion." *Cronin v.*

*Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold,*

*Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam); *Ramseur v. Chase*

*Manhattan Bank,* 865 F.2d 460, 465 (2d Cir. 1989)).

---

individually named Defendants. *See* Compl. ¶ 1; *see also Spiegel v. Schulmann*, 604 F.3d 72, 79
(2d Cir. 2010) (finding that the retaliation provision of the ADA does not provide for individual
liability).

[3] The NYSHRL claim is brought against the District and the individually named Defendants.

If the moving party meets its burden, then it is incumbent upon the nonmoving party to put forth in its opposition "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ.P. 56(e)). Such a showing must be specified and articulated and must provide more than a "metaphysical doubt" that the moving party's evidence warrants judgment in its favor. *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356; *see Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted) (holding summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case.").

## IV. DISCUSSION

Plaintiff alleges that, pursuant to the ADA, Defendants took unlawful retaliatory action against her for her protected activity, which, *inter alia*, took the form of advocacy on behalf of special education students. Governale also claims, pursuant to 42 U.S.C. § 1983, that she received differential treatment based on constitutionally impermissible considerations. Applying the standards set forth above, and for the reasons set forth below, Defendants' motion is granted as to Plaintiff's Section 1983 claim and denied as to the ADA and NYSHRL claims.

### A. <u>**ADA Retaliation Claim**</u>

Governale establishes sufficient questions of fact so to warrant a trial on her ADA retaliation claim. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The statute defines 'discriminate' to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Felix v. N.Y. City Transit Auth.*, 324 F.3d 102, 104 (2d Cir. 2003) (quoting 42 U.S.C. § 12112(b)(5)(A)). It is well-established that advocacy on behalf of the rights of the disabled is protected activity under the ADA. *See, e.g., Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002) (holding that parent's application for an accommodation for her disabled school-aged daughter was protected advocacy).

To survive a motion for summary judgment, a plaintiff bringing retaliation claims must satisfy the three-step *McDonnell Douglas* burden shifting framework. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases.") (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973)); *see also Castro v. City of N.Y.*, 24 F.Supp.3d 250, 269 (E.D.N.Y. 2014) (finding that plaintiff's retaliation claim under the ADA failed because complaints to his uncle were not considered protected activity). Initially, the plaintiff must establish a *prima facie* claim of retaliation claim. *See Teglia*, 313 F.3d at 719. The plaintiff's burden in this regard is *de minimis*, and the court's role in evaluating a summary judgment motion is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a

retaliatory motive. *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and citations omitted).

After establishing a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). Once the defendant provides such a reason, the final burden is on the plaintiff to establish that the defendant's reason is in fact a pretext for unlawful conduct. *See Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all time with the plaintiff.'" *Edwards v. Brookhaven Sci. Assocs., LLC*, 390 F. Supp. 2d 225, 233 (E.D.N.Y. 2005) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106 (2000) (internal quotations omitted)).

### 1. *Prima Facie* Retaliation

To state a *prima facie* retaliation claim under the ADA, a plaintiff must show that: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Harper v. Brooklyn Children's Ctr.*, No. 12-CV-4545, 2014 WL 1154056, at *3 (E.D.N.Y. Mar. 20, 2014) (quotation marks omitted) (emphasis in original); *Reynolds v. Gallagher Bassett Serv., Inc.*, No. 5:13-CV-1475, 2014 WL 4771866, at

*10 (N.D.N.Y. Sept. 24, 2014) ("Courts evaluate retaliation claims using the same framework, whether the claims are brought under Title VII or the ADA."). The Court considers each element in turn.

### a. Protected Activity

Plaintiff has presented sufficient evidence to establish a material issue of fact that she engaged in protected activity. A "'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). Generalized complaints are insufficient. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011). Complaints must be sufficiently specific to make clear that the employee is complaining about conduct prohibited by the applicable discrimination statute. *See id.* Protected activities can include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Protected activity may also take the form of either formal or informal complaints. *See Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 267 (E.D.N.Y. 2015).

A plaintiff need not establish an actual violation under the ADA, but instead must have "possessed a good faith, reasonable belief that the underlying employment practice was unlawful under the statute." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (internal quotation marks omitted). "To the extent that an employee complains about perceived 'unfair' treatment relating to job

responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity." *Penberg v. HealthBridge Mgmt.*, 823 F. Supp.2d 166, 191 (E.D.N.Y. 2011) (citing, *Velasquez v. Goldwater Memorial Hosp.*, 88 F. Supp.2d 257, 264 (S.D.N.Y. 2000)) (finding that general complaints about corporate policy without linking it to plaintiff's status are insufficient to establish "protected activity" under Title VII). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galdieri-Ambrosini*, 136 F.3d at 292.

Plaintiff has adequately established that she engaged in protected activity on behalf of her special education students. According to Plaintiff, she complained about inadequate services being provided to special education students. *See* Governale Dep. at 223-24, 246-47, 348-50. In addition, she complained about Peter Gregorchuk helping special education students cheat on exams and Christine Barrese writing research papers on behalf of those students. *See id.* at 17-18, 24-25. These complaints constitute protected activity under the ADA.

### b. *Employer Awareness*

Plaintiff has also established material issues of fact as to whether Cold Spring Harbor was aware of her protected activity. "[I]nformal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by [ . . . ] law." *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 322–23 (E.D.N.Y. 2014). "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it

understood, or could reasonably have understood, that the plaintiff's opposition was directed at [prohibited conduct]. " *Galdieri-Ambrosini*, 136 F.3d at 292. In this regard, "particular words such as 'discrimination' are [ . . . ] not required to put an employer on notice of a protected complaint." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013).

Here, during the 2012-2013 school year, Plaintiff states that she complained directly to Matuk about the lack of instruction and services offered to special education students at the high school. *See* Governale Dep. at 246-47. She also allegedly made numerous complaints to Campbell throughout the 2012-2013 school year about the lack of special education services provided to students in the District. *See id.* at 223-24, 348-50. Therefore, she has established that Defendants were aware of, and reasonably understood that, her opposition was directed at prohibited conduct. *See Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) (describing the employer awareness requirement as satisfied where plaintiff "complained directly" about discrimination to another "employee whose job it was to investigate and resolve such complaints"). Accordingly, Governale has sufficiently established genuine issues of material fact that the District was aware of her protected activity.

### c. *Materially Adverse Action*

Governale has established triable issues of fact as whether she suffered a materially adverse action. In the retaliation context, Courts have found an action to be "materially adverse" where "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Harper*, 2014 WL

1154056, at *3 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination[;] [ . . . ] the antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (addressing the standard under Title VII) (internal citation omitted). As the Supreme Court has explained:

> [T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.

*Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 68, 126 S. Ct. at 2415 (internal citations and quotations omitted). As to the adverse employment actions, Governale alleges that: (1) Defendants began documenting her whereabouts throughout the building while not documenting others; (2) she was paid less than other TA's for providing individualized instruction; (3) she was assigned more work and students than other TA's; (4) Plaintiff's pay was docked for taking time off while others were not; and (5) she was ultimately terminated from Cold Spring Harbor. *See* Governale Dep. at 266-67, 363-65, 366, 368, 393.

Governale's alleged changed conditions of her employment establish issues of fact as to whether she suffered materially adverse actions as retaliation for engaging

in protected activity. Initially, while certain examples of alleged adverse action might not, on their own, rise to the level of actionable conduct, the totality of conduct alleged, culminating in Plaintiff's termination, is sufficient to defeat the motion. *See Scafidi v Baldwin Union Free School Dist.*, 295 F.Supp.2d 235, 239 (E.D.N.Y. 2003) ("[Although] close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.") (internal citations omitted); *see also Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) ("Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"). Accordingly, the Court concludes that Plaintiff has successfully established a material issue of fact as to whether she sustained an adverse change in the terms and condition of her employment.

### d. Causal Connection

Governale has also presented sufficient evidence as to allow a reasonable jury to infer that her engaging in protected activity caused her materially adverse employment action. The final requirement to state an ADA retaliation claim is that "[a plaintiff] must show that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent." *Treglia*, 313 F.3d at 720. "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment,

or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). The Second Circuit has held that a "close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." *Treglia*, 313 F.3d at 720.

Governale has sufficiently established issues of fact as to retaliatory animus as her protected activity was followed closely in time by adverse treatment. It is undisputed that during the 2008-2009, 2009-2010, and 2010-2011 school years, Plaintiff did not have any complaints about the special education department, received positive performance evaluations and was invited back as a full-time leave replacement each year. *See* Governale Dep. at 60-63. During the 2011-2012 school year, however, Governale began increasing her engagement in protected activity by advocating to her supervisor, and she was told that there was no teaching position available at the end of the year, and was given a TA position at a substantially reduced salary. *See id.* at 108-112. Further, during the 2012-2013 school year, Plaintiff increased her advocacy for the special education students, and was subsequently terminated. *See id.* The Court, therefore, finds that Plaintiff has put forth material issues of fact as to a causal relationship between the protected activities and the adverse actions alleged sufficient to establish the fourth element of

a *prima facie* case. Accordingly, Plaintiff has satisfied her *de minimis* burden, which now shifts to Defendants to articulate a legitimate non-discriminatory reason for Plaintiff's adverse employment action.

### 2. Non-discriminatory Reason

Cold Spring Harbor has sufficiently proffered a legitimate non-discriminatory reason for Governale's adverse employment action. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions "which, if believed by the trier of fact, would support a finding that unlawful discrimination [or retaliation] was not the cause of the employment action." *Patterson v. Cnty. of Oneida*, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747 (1993)). "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Thus, "[t]he defendant's burden of production [ ] is not a demanding one . . . ." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446 (2d Cir. 1999).

Here, Defendants adequately articulate that Plaintiff's lateness and incidents with colleagues provided a legitimate reason for her termination. *Harrison v. Admin. Review Bd. of U.S. Dep't of Labor*, 390 F.3d 752, 759 (2d Cir. 2004) ("'Insubordination and conduct that disrupts the workplace are legitimate reasons for firing an employee,' and an employer may discharge an employee for inappropriate forms of complaint even if the complaint itself has substance.") (quoting *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000)); *see also Forrester v. Prison Health Servs.*, No. 12 CV 363,

2015 WL 1469521, at *15 (E.D.N.Y. Jan. 5, 2015), *report and recommendation adopted as modified*, No. 12-CV-363 NGG, 2015 WL 1469737 (E.D.N.Y. Mar. 30, 2015), *aff'd sub nom. Forrester v. Prison Health Servs*., Inc., 651 F. App'x 27 (2d Cir. 2016) ("Misconduct, excessive lateness, and poor performance are legitimate, non-discriminatory reasons for defendants' adverse actions.") (citing *Jones v. Yonkers Pub. Schs.*, 326 F.Supp.2d 536, 544 (S.D.N.Y. 2004)). Governale admits to having a dispute with another coworker over photocopies. *See* Governale Dep. at 177-78, 260-62. Additionally, Campbell testified as to additional incidents with other colleagues, including an argument between Plaintiff and her supervisor, Walsh, as well as other issues regarding lateness and attendance. *See* Campbell Dep. at 98-100, 106. Accordingly, Defendants have adequately established Plaintiff's lateness, attendance problems, and incidents with coworkers and supervisors as legitimate non-retaliatory reasons for her adverse employment action sufficient to shift the burden back to Governale to demonstrate that Defendant's proffered reason for her termination is a pretext for unlawful retaliatory conduct.

3. Pretext

Plaintiff has also established material issues of fact that would allow a reasonable juror to infer pretext. "If the defendant satisfies its burden, the plaintiff must adduce evidence from which a reasonable factfinder could conclude that the defendant's stated reason was pretext for retaliation." *Spaulding v. New York City Dep't of Educ.*, No. 12-Civ-3041, 2015 WL 12645530, at *51 (E.D.N.Y. Feb. 19, 2015), *report and recommendation adopted,* No. 12 CIV. 3041, 2015 WL 5560286 (E.D.N.Y.

Sept. 21, 2015). It is not sufficient, however, for a plaintiff merely to show that [s]he satisfies "*McDonnell Douglas*' minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir.2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, "whether the record contains sufficient evidence to support an inference of discrimination." *Valenti v. Massapequa Union Free Sch. Dist.*, No. 03-CV-1193, 2006 WL 2570871, at *7 (E.D.N.Y. Sept. 5, 2006) (internal citation omitted).

After the Supreme Court's decision in *Univ. of Texas Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517 (2013), it is an open question in this Circuit whether an ADA plaintiff must now show that the plaintiff's protected activity, in a retaliation claim was a but-for cause of the adverse employment action.[4] *See Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 141 n.15 (E.D.N.Y. 2015) (citing *Castro v. City of New York*, 24 F.Supp.3d 250, 269 n. 34 (E.D.N.Y. 2014) ("[T]he question of whether the heightened, 'but-for' standard of causation for Title VII retaliation claims . . . applies to claims asserted under the ADA, is one that has not yet been addressed by the Second Circuit.")). In *Nassar*, the Supreme Court held that, for a Title VII retaliation claim, unlike with discrimination claims, a plaintiff must establish that the allegedly

---

[4] Prior to *Nassar*, Courts in this Circuit applied a motivating factor standard for causation. *See, e.g., Campbell v. New York City Transit Auth.*, 93 F. Supp. 3d 148, 174 (E.D.N.Y. 2015), *motion for relief from judgment denied*, No. 11-CV-2827, 2015 WL 7455842 (E.D.N.Y. Nov. 23, 2015), *and aff'd*, 662 F. App'x 57 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1595, 197 L. Ed. 2d 722 (2017), *reh'g denied*, 137 S. Ct. 2236, 198 L. Ed. 2d 675 (2017) (addressing the evolving standard).

unlawful retaliation "was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." ⸺ U.S. at ⸺, 133 S.Ct. at 2533. The Court reached this conclusion because, among other reasons, the anti-retaliation provision of Title VII "makes it unlawful for an employer to take adverse employment action against an employee 'because' of certain criteria." *Nassar*, ⸺ U.S. at ⸺, 133 S.Ct. at 2528.

The ADA's provision against retaliation mirrors the language of Title VII, including its explicit use of the word "because." *See* 42 U.S.C. § 12203(a). As a result, several other circuits have applied a but-for standard causation for ADA claims as well. *See Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 592 (2016) ("The third element [of an ADA retaliation case] requires a showing of but-for causation."); *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) ("Discrimination here means retaliation—that 'but for' an employee's statutorily protected activity the employer would not have taken the "adverse employment action."); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015), *cert. denied sub nom. San Diego Unified Sch. Dist. v. T.B.*, 136 S. Ct. 1679 (2016) ("The but-for causation standard therefore applies equally to retaliation under Titles I and II."). Therefore, in the absence of authority from the Second Circuit, the Court applies the but-for standard.

Applying this standard, Plaintiff has established material issues of fact as to whether Defendants' reasons are pretextual, and that but-for her protected activity, she would not have been subject to adverse conduct culminating in her termination.

According to Governale, during the 2008-2009, 2009-2010, and 2010-2011 school years, she made no complaints, received positive employee evaluations, and was rehired each year. *See* Governale Dep. at 60-63. During the 2011-2012 school year, she made several complaints about special education services. *See id.* at 108-112. Then during the 2012-2013 school year, her complaints about special education services increased and included allegations of improper conduct by certain teachers providing these services. *See id.* at 268-69, 337-38. It was only after these complaints that she started receiving increased scrutiny, negative feedback, and was ultimately terminated. S*ee*, *e.g.*, *id.* at 203, 268, 365.

Moreover, there are contradictions within the testimony concerning Defendants' proffered legitimate, non-retaliatory reasons for Governale's termination. *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action."). From such discrepancies, a reasonable juror could conclude that Defendants' explanations were a pretext for a prohibited reason. *See*, *e.g.*, *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994) (collecting cases). Denise Campbell testified that, during a February 2013 conversation, she explained to Governale that "its not looking like we're going to have the same numbers next [school] year," due to Cold Spring Harbor's changing "programmatic needs." Campbell Dep. at 95-97. Campbell further testified that Plaintiff was the only TA terminated at the end of the

2012-2013 school year. *See id.* at 127-28. Nevertheless, Arden Benvenuit ("Benvenuit"), a TA at Cold Spring Harbor, testified that a new TA was hired for the school year immediately following Plaintiff's termination. *See* Deposition of Arden Benvenuit ("Benvenuit Dep."), DE [37-3], at 55-57. Matuk testified that the potential disruption, divisiveness and impact on teaching caused by Plaintiff's complaints formed the basis for her termination. *See* Deposition of Jay Matuk, DE [39-2], at 92-93. Moreover, Benvenuit and Matuk testified that they were unable to recall any other TA being terminated for insubordination, unprofessional behavior, or lateness. *See* Matuk Dep. at 95; Benvenuit Dep. at 70. In light of the entire record, including these inconsistencies, Governale has established issues of fact to be determined at trial as to whether she was wrongfully retaliated against, and Defendants' motion for summary judgment as to her ADA retaliation claim is denied.

**B. 42 U.S.C. § 1983 Claims**

Conversely, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to her 42 U.S.C. § 1983 claim sufficient to defeat summary judgment. Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To prevail on a claim

23

arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state[-]law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983). Further, a plaintiff asserting a class-based equal protection claim under Section 1983 must allege that the discriminatory actions were intentional and based on his protected class. *See Brown v. City of Oneonta*, 221 F.3d 329 (2d Cir. 2000). Alternatively, in addition to alleging a protected class, a plaintiff may pursue an Equal Protection claim under either a "class of one" or "selective enforcement" theory. *See Vassallo v. Lando*, 591 F. Supp. 2d 172, 183 (E.D.N.Y. 2008). The "class of one" theory," however, is not available to a public employee bringing suit against her public employer. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 607, 128 S.Ct. 2146, 2157 (2008) (finding that the "the class-of-one theory of equal protection has no application in the public employment context"). Plaintiff's Section 1983 claim is made pursuant to a selective enforcement theory based on alleged differential treatment because of her advocacy on behalf of special education students. *See* Pl. Opp. at 20-23.

To prevail on a selective enforcement claim, a plaintiff must show "(1) that she was treated differently from others similarly situated, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 592 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). At the summary

judgment stage, the plaintiff must present evidence comparing herself to individuals that are "similarly situated in all material respects." *Sloup v. Loeffler*, No. 05–CV1766, 2008 WL 3978208, at *18 (E.D.N.Y. Aug. 21, 2008) (internal quotation marks and citation omitted). In analyzing the second prong, courts must distinguish between a "motivation to punish [in order] to secure compliance with agency objectives," and "spite, or malice, or a desire to 'get' [someone] for reasons wholly unrelated to any legitimate state objective." *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir.1995)).

Governale has failed to raise a genuine dispute of material fact as to whether any other TA was treated more favorably than her despite having similar performance issues. Simply put, Plaintiff fails to identify the existence of a similarly situated comparator. Instead, Plaintiff only makes conclusory allegations about unnamed individuals. Accordingly, defendants are entitled to summary judgment on Governale's Section 1983 claim as a matter of law.

### C. **NYSHRL**

Triable issues also exist as to Plaintiff's NYSHRL claims. Retaliation claims under the ADA and NYSHRL are analyzed under the same burden-shifting framework. *See Weixel v. Board of Educ. of the City of New York*, 287 F.3d 138, 148–49 (2d Cir. 2002) (elements of a retaliation claim under Rehabilitation Act are same as the ADA); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (applying ADA analysis to plaintiff's retaliation claim under both ADA and NYHRL). Thus, to the extent that Governale brings a state-law retaliation claim, it survives or fails on the same basis as her ADA claim. Accordingly, as the Court denies summary

judgment against Plaintiff's ADA claim, it also denies summary judgment as to the state law claim

## V. CONCLUSION

For the reasons set forth herein, Defendants' motion for summary judgment is granted in part and denied in part. The motion is denied as to Plaintiff's ADA and NYSHRL claims and granted as to her 42 U.S.C. § 1983 claim.

Dated:      Central Islip, New York
             September 29, 2017


                                       s/ Steven I. Locke
                                       STEVEN I. LOCKE
                                       United States Magistrate Judge